# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | |
|---|---|
| **ETOLIA L. TAYLOR,**<br><br>**Plaintiff,**<br><br>*vs.*<br><br>**CAROLYN W. COLVIN, Commissioner of Social Security,**<br><br>**Defendant.** | **CAUSE NO. 1:13-cv-1994-SEB-DKL** |

## REPORT AND RECOMMENDATION

Plaintiff Etolia L. Taylor brings this suit for judicial review of the defendant Commissioner's denial of her applications for disability-insurance and supplemental-security-income disability benefits under the Social Security Act. The assigned district judge referred this Cause to this magistrate judge for submission of proposed findings and a recommended disposition under 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(1). *Order Referring Issues to Magistrate Judge* [doc. 7].

### Standards

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports

1

the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 905. A person will be determined to be disabled only if her impairments "are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

2

1382c(a)(3)(B).  The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process.  42 U.S.C. § 423(a)(3)(G).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability.  If disability status can be determined at any step in the sequence, an application will not be reviewed further.  At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled.  At the second step, if the applicant's impairments are not severe, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, then the applicant is deemed disabled.  The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling.  20 C.F.R. § 404.1525.  If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy.  At the fourth step, if the applicant has the RFC to perform her past relevant work, then she is not disabled.  Fifth, considering the applicant's age, work experience, and education (which

3

are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. ▪ 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability

examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

**Background**

Ms. Taylor's applications for benefits were denied on initial and reconsideration review. She requested and received a hearing before an administrative law judge ("ALJ"), which hearing occurred in June 2012. (R. 28.) Ms. Taylor was represented by present counsel at the hearing. She and a vocational expert testified. The ALJ issued a decision denying her applications and Ms. Taylor requested the Appeals Council to review the decision. The Appeals Council's denial of her request rendered the ALJ's decision final and the one that the Court reviews.

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

5

At step one, the ALJ found that Ms. Taylor had not engaged in substantial gainful activity since her alleged onset date in August 2010. At step two, she found that Ms. Taylor has the severe impairments of major depressive disorder, recurrent and mild; borderline intellectual functioning; and a personality disorder. She found that Ms. Taylor did not have any severe physical impairments. At step three, the ALJ found that Ms. Taylor did not have an impairment or combination of impairments, severe and non-severe, that meets or medically equals any of the Listings of Impairments. She examined Listings 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.08 (personality disorders). For steps four and five, the ALJ determined that Ms. Taylor has the residual functional capacity for work at all of the exertional levels with the added pertinent restriction that she is able to perform simple repetitive tasks on a sustained basis and in a work setting that does not involve prolonged interpersonal contact with others. At step four, the ALJ determined that this RFC permits Ms. Taylor to perform her past relevant work and she is, therefore, not disabled. Alternatively, at step five, she determined that, considering Ms. Taylor's age, education, and skills, and relying on the opinion of the vocational expert, jobs that Ms. Taylor can perform exist in significant numbers in the national economy and she is, therefore, not disabled.

## Discussion

Ms. Taylor raises four errors in the ALJ's decision.

**1. Satisfaction of Listing 12.04's criteria.** Ms. Taylor asserts that the ALJ's step-three determination was erroneous, specifically her analysis of Parts A and B of Listing 12.04 for affective disorders. To be found disabled under Listing 12.04, a claimant must satisfy the diagnostic description in the Listing's introductory paragraph and either **(a)** the set of medical findings in paragraph A (which medically substantiate the presence of the mental disorder) and the set of impairment-related functional limitations in paragraph B, or **(b)** the functional criteria in paragraph C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A ("*Listings*"), §§ 12.00A and 12.04. The ALJ found that the criteria of Paragraphs A, B, and C were not satisfied.

To satisfy Paragraph B, a claimant must show that his impairment, or combination of impairments, has resulted in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.[2]

*Listings* § 12.04B. The ALJ found that Ms. Taylor had **mild** restrictions of activities of daily living; **moderate** difficulties in social functioning; **moderate** difficulties in concentration, persistence, or pace; and **no** episodes of decompensation. (R. 16-17.) Not

---

[2] "Extended duration" means "three episodes within 1 year, or an average of one every 4 months, each lasting for at least 2 weeks." *Listings* § 12.00C4.

finding any marked restrictions or difficulties, the ALJ found that the Paragraph B criteria were not satisfied.

Ms. Taylor argues that the ALJ's Paragraph B finding was erroneous because she ignored a Global Assessment of Functioning ("G.A.F.") score of 48 that was assigned by examining consulting psychologist Hebert Henry, Ph.D., as part of his mental status examination. (R. 282.) The ALJ discussed and evaluated Dr. Henry's report, (R. 18-19, 20), and afforded it "minimal weight," (R. 20), but she did not mention his G.A.F. score of 48. Ms. Taylor argues that a G.A.F. score of 48, as defined in the American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("*DSM-IV-TR*") 32-34 (4th ed. Text Revision, 2000), means the inability to maintain employment and, therefore, "prov[es] Marked impairment in the 12.04B criteria." (*Plaintiff's Brief in Support of Complaint To Review Decision of Social Security Administration* [doc. 18] ("*Brief*") at 9.)

Ms. Taylor places too much weight on Dr. Henry's G.A.F. score. As the Commissioner points out, G.A.F. scores, while useful for treatment purposes, do not necessarily reflect a clinician's opinion about a subject's functional capacity because a score represents either symptom severity or functional level, but always the lower of the two. *DSM-IV-TR* at 32-34. *Punzio v. Astrue*, 630 F.3d 704, 711 (7th Cir. 2011). The Social Security Administration has not endorsed the use of the G.A.F. scale in its disability determinations, declaring that "[i]t does not have a direct correlation to the severity requirements in our mental disorders listings." *Revised Medical Criteria for Evaluating*

*Mental Disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50746, 50764-65; 2000 WL 1173632 (Aug. 21, 2000). In addition, the American Psychiatric Association abandoned the G.A.F. scale in its next edition of the *DSM* because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013). *See Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014). The Court of Appeals for the Seventh Circuit has also cautioned that a disability determination should not be based on G.A.F. scores alone:

> Because "the final GAF rating always reflects the worse of the two" [*DSM-IV-TR*] at 33, the score does not reflect the clinician's opinion of functional capacity. Accordingly, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Wilkins v. Barnhart*, 69 Fed.Appx. 775, 780 (7th Cir. 2003) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Rather than relying on the unexplained numerical score assigned by Boyd [state-agency psychologist], the ALJ's ultimate finding of no disability was substantially supported by Boyd's narrative finding that Denton had no significant mental impairments.

*Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013). Therefore, an ALJ's failure to mention or discuss a G.A.F. score as a medical opinion that a claimant is disabled is not erroneous.

In this case, the ALJ undertook an analysis of the record evidence and determined that Ms. Taylor did not have a marked limitation or restriction in any of the first three functional categories of Paragraph B. Ms. Taylor's reliance on Dr. Henry's unexplained G.A.F. score of 48 alone as dispositive proof that she satisfied the Paragraph B criteria of Listing 12.04 is insufficient. She does not specify which of the four functional-limitation

categories of Paragraph B the score proves was met and she points out no other error in the ALJ's analysis. It is, by now, well-established that an ALJ need not mention or address every piece of evidence in the record. *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013) ("an ALJ is not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence"). What is required is that the ALJ build a logical bridge from the evidence to his conclusions and sufficiently articulate his analysis and rationale so that a court can trace the path of his reasoning. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). Ms. Taylor has not shown that the ALJ committed error by not specifically articulating his evaluation of Dr. Henry's unexplained G.A.F. score, which, as has been shown, has limited, if any, bearing on a claimant's functional limitations. The ALJ assigned Dr. Henry's opinions "minimal weight" and Ms. Taylor has not shown that the ALJ erred thereby.

Because the Court has found that the ALJ did not err in her Paragraph B determination, the Court need not address Ms. Taylor's argument that the ALJ also erred in her determination that the Paragraph A criteria were not satisfied. As noted, Listing 12.04 is satisfied only if *both* Paragraphs A and B are satisfied *or* Paragraph C is satisfied, and Ms. Taylor did not challenge the ALJ's determination that the Paragraph C criteria were not satisfied.

10

**2. Expert medical opinion regarding medical equivalence.** Ms. Taylor argues that the ALJ erred by failing to obtain expert medical opinion on the issue of whether Ms. Taylor's impairments medically equaled any listed impairment. Ms. Taylor's argument fails.

> Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue. *See* 20 C.F.R. § 404.1526(b) ("Medical equivalence must be based on medical findings. . . . We will also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence."); S.S.R. 96–6p at 3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."), reinstating S.S.R. 83–19; *see Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir.1989) (concluding that ALJ complied with requirement of Social Security Ruling 83–19 that he consider a consulting physician's opinion regarding medical equivalency).

*Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004). State-agency psychologists completed Disability Determination and Transmittal forms recording their opinions that Ms. Taylor is not disabled, which includes an opinion that her impairments do not medically equal any listing. (R. 61-64.) Such forms satisfy the requirement for expert medical opinion on the issue of medical equivalence. S.S.R. 96-6p; *see Staggs v. Astrue*, 781 F.Supp.2d 790, 795 (S.D. Ind. 2011).

In her reply, Ms. Taylor argues that the Mental Residual Functional Capacity Assessment form ("MRFC"), (R. 284), and the Psychiatric Review Technique form

("PRTF"), (R. 288), which were completed and confirmed by the state-agency psychologists and cited by the ALJ cannot supply the necessary expert medical-equivalence opinion because the forms say nothing about medical equivalence. (*Plaintiff's Response to Defendant's Memorandum* [doc. 20] at 7.) In addition, the PRTF "ha[s] a category to be checked off regarding whether the claimant's impairments 'Equal Listing' but no indication was made in that box by the agency psychologist." (*Id.*)

The authorities cited and quoted above declare that a Disability Determination and Transmittal form ("DDT") completed by state-agency psychologists is sufficient to supply the required expert opinion on medical equivalence and, as noted above, those forms are in the record in this case. Therefore, unless Ms. Taylor can show a signficant inconsistency between the DDTs and the MRFC and PRTF, her argument must fail — and she has not shown any such inconsistency.

Even her argument as it is, based on the contents of the MRFC and PRTF, fails. The PRTF specifically asks if the Paragraph A (R. 289-97), B (R. 298), and C (R. 299) criteria are satisfied for each of the nine mental-disorder Listings, and the first page of the form asks which, if any, Listings have been met or equaled, (R. 288). That the state-agency reviewers did not check the box for "Equals Listing" (or the box for "Meets Listing") and did not identify, as requested, any Listings that were equaled or met means that the state-agency psychologists specifically concluded that Ms. Taylor's impairments did not equal Listing 12.04 or any of the mental-disorder Listings. The MRFC is a check-box breakdown

of specific functions comprising four functional categories by which the state-agency reviewers rate the degree of limitation of each function within each category (*e.g.*, "not significantly limited," "moderately limited," and "markedly limited"). Therefore, it is unremarkable that the MRFC does not ask about medical equivalence to a Listing.

Ms. Taylor has not shown that the ALJ erred by failing to call a medical advisor on the issue of Listings medical equivalence.

**3. Credibility.** Ms. Taylor's counsel again presents his boilerplate credibility argument and fails again. The ALJ's articulation of her credibility determination is not perfunctory: it is not limited to the one paragraph that he quotes, (*Brief* at 15; R. 19), but covers several pages. The ALJ did not employ "backwards procedure": her decision does not state its conclusion and then undertake only a supporting analysis. She engaged in a thorough discussion of the evidence of record and articulated the bases for her credibility determination. The ALJ did not "fail[ ] to cite any evidence in support of her conclusory statements" and she was not intentionally vague, as even a cursory reading of her decision demonstrates and counsel's assertions to the contrary are, at least, disingenuous.

**4. Steps four and five.** Ms. Taylor argues that the ALJ erred by not apprising the vocational expert directly of the "moderate" difficulties that she found in the two functional categories of social functioning and concentration, persistence, or pace. Ms. Taylor contends that the ALJ's translation of the moderate difficulties into an RFC

13

restriction to to "simple repetitive tasks . . . involving simple instructions and simple work related decisions and procedures" violates the rule of *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-19 (7th Cir. 2010), by not having a medical basis for the translation.

In *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-19 (7th Cir. 2010), the Court of Appeals for the Seventh Circuit held that a vocational expert ("VE") must be informed of deficiencies in a claimant's concentration, persistence, or pace, and that the most effective way to ensure this is to include those deficiencies directly in the hypotheticals at the hearing. The decision declared that "[i]n most cases, . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace," *id.* at 620, because even simple and repetitive tasks might be difficult for a claimant with concentration, persistence, or pace deficiencies to perform.

*O'Connor-Spinner* does not require using the specific terms "concentration, persistence, or pace" in all circumstances, however. Two exceptions generally have been recognized in the case law.³ First, if the record reveals that the VE independently reviewed the medical evidence or heard the medical testimony that was directly relevant to the deficiencies, then the VE's familiarity with a claimant's limitations can be assumed

---

³ The Court of Appeals emphasized, as does this Court, that "[y]et, for most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O*=*Connor-Spinner*, 627 F.3d at 620-21.

14

despite gaps in the ALJ's hypotheticals. *O'Connor-Spinner*, 627 F.3d at 619. However, if an ALJ poses a series of increasingly restrictive hypotheticals to the VE, the assumption is that the VE's attention was focused on the hypotheticals and not other evidence in the record or testimony. Second, if the ALJ's alternate phrasing accurately excludes the functions that the claimant cannot perform due to his deficiencies, then the VE has been fully advised; in other words, when the ALJ's hypothetical excludes the triggers or causes of the claimant's deficiencies, then the deficiencies have been accommodated. The example that *O'Connor-Spinner* cited as the most frequent application of this exception is when a claimant's deficiencies in concentration, persistence, or pace are stress- or panic-related and the ALJ's hypothetical restricts the claimant to low-stress work. *Id.* at 620.

In this case, the ALJ explicitly made her findings of moderate difficulties in social functioning and concentration, persistence, or pace for the purpose of evaluating the Paragraph B criteria of the Listings, not as an RFC assessment. (R. 17.) When she made her later determination of Ms. Taylor's RFC, she explicitly "adopted" the state-agency psychologists' narrative opinions that Ms. Taylor "could perform simple, repetitive tasks on a sustained basis" and "would benefit by working in an environment that did not involve prolonged and interpersonal contact with others." (R. 19.) The "Functional Capacity Assessment" narrative section of the MRFC, completed and affirmed by the state-agency psychologists, includes this exact language of functional ability and restriction. (R. 286, 302-03.) The ALJ wrote that "[t]he expanded record (as detailed

above) is consistent in showing the claimant has the capability of performing at least unskilled work with no significant problems in concentration, persistence or pace, but suggested that she had more difficulty relating to others. . . . I have resolved all doubts in the claimant's favor and have restricted the claimant to performing simple repetitive tasks on a sustained basis in a work setting that does not involved prolonged interpersonal contact with others." (R. 19-20.) This was the content of the hypothetical that he gave to the vocational expert. (R. 55.)

Therefore, because the ALJ provided the VE with the restrictive language defined by the state-agency psychologists, without translation, the principle of *O'Connor-Spinner* was not violated. Ms. Taylor has not shown error in the ALJ's decision.

**Conclusion**

Because Plaintiff has not shown that the ALJ's decision is unsupported by substantial evidence or legally erroneous, this magistrate judge recommends that the Commissioner's decision denying Plaintiff's claims for disability benefits be **AFFIRMED**.

**Notice regarding objections**

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. ▪ 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. ▪ 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to de novo

determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date: February 6, 2015**

*[signature]*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.